TAPP, n.k.a. Morrow, Appellee,

v.

TAPP, Appellant.

[Cite as *Tapp v. Tapp* (1995), 105 Ohio App.3d 159.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15011.

Decided June 14, 1995.

**160**

*Peter R. Certo, Jr.,* for appellee.

*James R. Kirkland,* for appellant.

BROGAN, Judge.

Appellant, Michael R. Tapp, appeals from the judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, finding him in contempt of court and ordering him to pay for his daughter's college education in accordance with the terms of a separation agreement.

Michael and Karol Ann Tapp, now Morrow, were married on March 8, 1975. One child, Emily Tapp, was born of the marriage on October 9, 1975. After a separation, the parties' marriage was dissolved in 1982. As part of the final decree of dissolution, the trial court approved and incorporated into its judgment a separation agreement that the parties had negotiated and signed. The separation agreement contains a paragraph that states as follows:

"The Husband shall be responsible for the payment of all expenses incurred by or for the minor child's college education in a four-year, undergraduate program, including, but not limited to, all books, tuition, room and board, at a college or university of the Husband's approval."

On June 30, 1994, Morrow filed a motion for an order requiring Tapp to show cause why he should not be held in contempt of court for failing to comply with the court order regarding payment of Emily's college tuition and expenses. Morrow alleged that Tapp had failed to cooperate with repeated requests to make arrangements for the payment of Emily's college tuition. A hearing was held in front of a referee on August 29, 1994.

At the hearing, Morrow testified that Emily had applied to five universities during her senior year of high school. Of the five universities, only the University of Cincinnati and Wright State University accepted Emily outright. The other universities suggested that Emily first attend a junior college for one or two semesters and then reapply for admission.

Emily decided to attend the University of Cincinnati. Morrow testified that she and Emily had contacted Tapp in February 1994 to inform him of Emily's

plan and to make arrangements for payment of tuition and expenses. The approximate cost per year at the University of Cincinnati including room and board is $10,000. Tapp refused to cooperate in making arrangements to pay for the tuition and expenses.

Because of Tapp's refusal to pay, Emily decided not to attend the University of Cincinnati and enrolled at Wright State University instead. At the time of the contempt hearing, Emily was currently enrolled as a full-time student at Wright State University and had incurred expenses of $1,078 for tuition and $414 for a meal plan. Emily is living at home because she was unable to obtain student housing at Wright State University due to her late enrollment. Morrow testified that Tapp was again contacted and asked to make arrangements to pay for Emily's tuition and expenses at Wright State University in accordance with the parties' separation agreement, and, once again, he refused to cooperate.

Tapp testified that he refused to pay for Emily's tuition and expenses at Wright State University and the University of Cincinnati because he did not "approve" of those schools. It was his belief that Emily should first attend a community college for two years because she would perform better academically at a community college. Tapp stated that the only college or university he "approved" of was Sinclair Community College. He further testified that his disapproval of other schools was not based on financial concerns, but rather on his concerns regarding Emily's scholastic abilities.

On September 21, 1994, the referee issued her report recommending that Tapp be found in contempt of court and that he be ordered to pay for Emily's college tuition and expenses in an amount not to exceed the cost of a four-year program at the Ohio State University, regardless of what university Emily attends. The referee found that the phrase "college or university of the Husband's approval" in the parties' separation agreement should not be interpreted as giving Tapp a complete veto over Emily's choice of schools. The referee further found that Tapp had unreasonably withheld his approval. Tapp filed timely objections to the referee's report. On December 23, 1994, the trial court overruled the objections and adopted the referee's report and recommendations.

Tapp proceeded to file this timely appeal.

Tapp raises the following assignments of error on appeal:

"I. The Montgomery County Court of Common Pleas erred as a matter of law by interpreting a clear and unambiguous term of a separation agreement.

"II. The Montgomery County Court of Common Pleas abused its discretion when it found Mr. Tapp must pay the equivalent of Ohio State University's tuition, etc."

As both assignments of error concern the trial court's interpretation of the parties' separation agreement, they will be considered together.

Initially, we note that courts are generally without jurisdiction to order parents to support children who have attained the age of majority. *Maphet v. Heiselman* (1984), 13 Ohio App.3d 278, 279, 13 OBR 343, 344, 469 N.E.2d 92, 93–94; *Miller v. Miller* (1951), 154 Ohio St. 530, 43 O.O. 496, 97 N.E.2d 213. However, a well-established exception to this general rule exists where the parties have entered into a separation agreement that provides for child support beyond the age of majority and such agreement is incorporated into the divorce or dissolution decree. *Nokes v. Nokes* (1976), 47 Ohio St.2d 1, 1 O.O.3d 1, 351 N.E.2d 174; *Grant v. Grant* (1977), 60 Ohio App.2d 277, 14 O.O.3d 249, 396 N.E.2d 1037. The trial court may then enforce the provision providing for such support. One of the most common reasons for providing for the support of adult children is to provide sufficient funds for the children's college education. See *Maphet, supra.* Thus, the court in the present case had proper jurisdiction to enforce the separation agreement.

Tapp first argues that, pursuant to contract rules of construction, the trial court erred in interpreting the term "approval," because the term is unambiguous and should be given its plain and ordinary meaning. Tapp contends that, pursuant to the ordinary meaning of the term "approval," he was entitled to "judge the choice of the daughter, and based on the facts, find the choice acceptable."

A separation agreement is a contract and is, therefore, subject to the same rules of construction that apply to other contracts. *Forstner v. Forstner* (1990), 68 Ohio App.3d 367, 372, 588 N.E.2d 285, 288; *Uram v. Uram* (1989), 65 Ohio App.3d 96, 99, 582 N.E.2d 1060, 1061–1062. Assuming *arguendo* that the term "approval" is unambiguous, Tapp, nonetheless, still had a duty to act reasonably and in good faith when approving Emily's choice of schools.

In *Herold v. Herold* (Dec. 22, 1992), Franklin App. No. 92AP–36, unreported, 1992 WL 386022, the Franklin County Court of Appeals was confronted with a similar issue concerning a clause in a separation agreement requiring "mutual agreement" between the father, mother and child regarding the child's choice of schools. The *Herold* court found that, pursuant to traditional contract law, the parties could not unreasonably withhold their agreement:

"Where a contract contains a satisfaction clause which must appeal to the personal taste or preference of a party, the contract must be substantially performed to the satisfaction of that party. *Thermal Master, Inc. v. Greenhill* (Sept. 29, 1987), Franklin App. No. 86AP–745, unreported [1987 WL 17801], citing *Schatzinger v. Lake View Land & Improvement Co.* (* * * 1910), 13 Ohio C.C.

(N.S.) 410 [23 Ohio C.D. 247] [affirmed (1912), 87 Ohio St. 505], 102 N.E. 1126, and *Trustees of the Cincinnati [S. ] Ry. * * * v. Porter* (1918), 21 Ohio N.P. (N.S.) 441 [30 Ohio Dec. 9]. However, the party must act reasonably and in good faith when refusing to be satisfied. * * *"

Based on the above language, the *Herold* court found that the father had unreasonably withheld his agreement to the child's choice of schools and, thus, required him to comply with his contractual obligation to pay.

We find the reasoning in *Herold* to be persuasive. Thus, we must determine whether Tapp unreasonably withheld his approval of Emily's choice of schools.

In the present case, Tapp claims that he withheld his approval based solely on his concerns regarding Emily's academic performance in a four-year college or university program. The language in the separation agreement states that Tapp shall be responsible for the payment of college tuition and expenses "for the minor child's college education in a *four-year, undergraduate program*" (emphasis added). It is undisputed that the only school that Tapp approves of and is willing to pay for is Sinclair Community College. Additionally, it is undisputed that Sinclair Community College does not provide any four-year college programs, but, rather, provides only two-year programs. We recognize that a parent may have legitimate concerns regarding his or her child's academic abilities that will affect the choice of a university or college for that child. However, the only school Tapp has suggested that Emily attend clearly does not meet the requirements set forth in the separation agreement of a "four-year undergraduate program." Because Sinclair Community College plainly does not offer a four-year undergraduate program, we find that, even under the interpretation of "approval" offered by Tapp, he has unreasonably withheld his approval.

Accordingly, we find that the trial court did not err in finding Tapp in contempt of court and requiring him to pay for Emily's college education. Because Tapp unreasonably withheld his approval, even under the interpretation of "approval" offered by him, we need not reach the issue of whether the trial court erred in finding that the term "approval" was vague and ambiguous.

We further find no error in the trial court's order that Tapp's obligation to pay for Emily's education shall be restricted to the cost of a four-year program at Ohio State University, regardless of which university or college Emily actually attends. As it is unclear whether Emily will remain at Wright State University or will transfer to another university, we find no abuse of discretion in the trial court's use of Ohio State University as a limitation.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and FAIN, JJ., concur.