OPINION
{¶ 1} Defendant-Appellant Andrew Bernard Davis appeals from an order finding him in contempt for failing to pay fifty percent of expenses incurred by his son, Andy, in pursuit of a bachelor's decree at the Ohio State University (OSU). Davis contends that the trial court's order failed to give proper consideration to the intent of the separation agreement. Davis further contends that the trial court failed to properly consider evidence indicating that Davis was to receive a credit against college expenses when he provided his son with a vehicle.
 {¶ 2} Plaintiff-Appellee Janet (Davis) Zornes cross-appeals from the award of attorney fees to her. Zornes claims that the trial court abused its discretion by implementing a rule of court that precludes a prevailing party from obtaining attorney fees in an adequate amount from an opposing party who is held in contempt.
 {¶ 3} We conclude that the trial court did not err in finding Davis in contempt, or in setting the amount of attorneys fees awarded to Zornes. The court did err in calculating the amount of reimbursement due Zornes under the separation agreement. Accordingly, the order of the trial court is Reversed with respect to the amount of reimbursement ordered; the order of the trial court is Affirmed in all other respects; and this cause is Remanded for further proceedings.
 I {¶ 4} Davis and Zornes filed a petition for dissolution and a separation agreement in February, 1997. At the time, they had two minor children, Andy (age fourteen) and Jordan (age eight). The separation agreement was incorporated into the final decree, and stated as follows:
 {¶ 5} "Husband and wife both agree that they shall each pay 50% of all costs incurred for tuition, room, board and books for the children's college education to enable the children to obtain a bachelor's degree."
 {¶ 6} The parties' elder child, Andy, began college at OSU in September, 2001. For the first two years, Davis and Zornes jointly paid for Andy's books, tuition, and room and board. Andy then received a scholarship through ROTC, beginning his junior year. The scholarship paid for tuition, $175 per quarter for textbooks, and a $400 monthly stipend for living expenses. At the time, Andy was living in an off-campus apartment, and the stipend did not completely cover his expenses. As a result, each parent paid 50% of the shortfall.
 {¶ 7} Friction began developing between Andy and his parents, and most particularly, his father. Andy had not been employed during the summer of 2003, and worked only one month during the summer of 2004. His parents wanted him to get a job during the summers. They also offered to have him come home and live with them during the summer, but Andy chose to stay in Columbus, Ohio. In the summer of 2004, Andy took out a $5,000 loan to help defray his expenses. At some point, Andy also took out a loan for $3,500. Davis continued to pay his share of Andy's expenses until June, 2004. Davis then stopped and did not give Andy more money until November, 2004.
 {¶ 8} That academic year (2004-2005) would have been Andy's senior year. ROTC again paid tuition, book money, and the living stipend during the fall, winter, and spring quarters of that academic year. However, Andy decided to change majors from aeronautical engineering to mathematics, and ROTC required Andy to repay the tuition money for the fall 2004, and winter 2005 quarters. Andy was allowed to keep the stipend from ROTC.
 {¶ 9} Davis was upset about the change of majors. He was also upset because Andy had been highly intoxicated when he came to Davis's house during Christmas, 2004. Davis told Andy during December, 2004, that he would not contribute any more money as long as Andy did not have a job.
 {¶ 10} The amount of the tuition money that had to be repaid was $4,910. After learning that the tuition money had to be repaid to ROTC, Andy took out a third loan in the amount of $6,500, in the spring of 2005. Zornes co-signed on this loan, after Davis refused. ROTC then approved the change of major and paid tuition for the spring quarter.
 {¶ 11} At some point, the parties discussed the idea of letting Davis give Andy a truck, valued at $4,000, in partial payment of the debt, but the Zornes and Andy testified that this arrangement was never actually agreed to by all the parties. Davis eventually gave Andy the truck in June, 2005, in exchange for a car that Andy owned. Davis was later able to sell that car for $500.
 {¶ 12} Zornes filed a motion for contempt in July, 2005, claiming that she had been required to fund $14,712.22 in expenses, and had to procure student loans to fund the expenses. The listed expenses included: (1) rent from June 2004 through August, 2005 ($4,950); (2) tuition for fall, 2004, and winter, 2005 ($4,910); (3) food for the fall 2004, and spring and winter 2005 quarters ($3,300); (4) online access through April 30, 2005 ($610.68); (5) cell telephone through April 30, 2005 ($120); and (6) an electric bill for an unspecified time period ($820.34).
 {¶ 13} After hearing the evidence, the magistrate found Davis in contempt, fined him $250, and sentenced him to thirty days in jail. The magistrate suspended the fine and sentence, contingent on Davis immediately paying Zornes the sum of $7,360.61. The magistrate also ordered Davis to pay Zornes $200 in attorney fees, noting that Loc. R. 14(H)(2) allowed standard attorney fees of $200 upon the filing of contempt. In addition, the magistrate noted that if a higher amount were sought, the attorney was required to request fees by motion and present independent evidence of reasonableness.
 {¶ 14} Davis filed timely objections to the magistrate's decision, but Zornes did not file any objections. Subsequently, the trial court overruled Davis's objections. The court found that since Davis did not seek to modify the terms of the separation agreement during his son's minority, the court was limited to enforcing the relevant parts of its prior order. The court further concluded that the terms of the separation agreement were not ambiguous and they required Davis to reimburse Zornes for one-half of the college expenses she had paid. The issue of attorney fees was not discussed.
 {¶ 15} From the order holding him in contempt, Davis timely appeals. Zornes cross-appeals, contending that the amount of attorney fees awarded to her is inadequate.
 II {¶ 16} Davis's First Assignment of Error is as follows:
 {¶ 17} "THE TRIAL COURT ERRED IN ADOPTING THE DECISION OF THE MAGISTRATE ORDERING APPELLANT TO REIMBURSE THE APPELLEE COLLEGE EXPENSES FOR THE PARTY'S [SIC] SON WHEN THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED SHOWED THATTHE SON HAD OBTAINED STUDENT LOANS WITHOUTTHE PARENT'S [SIC] KNOWLEDGE OR CONSENT AND HAD OTHERWISE ACTED AGAINSTTHE PARENTS [SIC] WISHES REGARDING HIS CONDUCT AND HAD MADE FINANCIAL EDUCATIONAL AND LIFESTYLE DECISIONS WITHOUT DUE REGARD TO HIS PARENTS [SIC] DIRECTIVES ALL OF WHICH WENT AGAINST THE REASONABLE INTENT OF THE LANGUAGE SET FORTH IN THE PARTIES [SIC] SEPARATION AGREEMENT AND WHICH CAUSED FINANCIAL EXPENSES UPON THE PARENTS THAT WOULD OTHERWISE NOT HAVE BEEN INCURRED."
 {¶ 18} Trial courts generally do not have jurisdiction to order support for children beyond the age of majority. An exception exists where the parties have provided for child support beyond the age of majority in a separation agreement that is incorporated into the divorce or dissolution decree. Tapp v. Tapp (1995), 105 Ohio App.3d 159, 162,663 N.E.2d944.
 {¶ 19} Davis contends that the trial court erred by failing to consider the fact that the lifestyle and educational choices of his son violated the reasonable intent of the parties' agreement. We agree with the trial court that the separation agreement did not condition payment on parental approval of the children's lifestyle or educational decisions. Accordingly, the trial court did not err in finding that Davis had an obligation to pay 50% of the room, board, tuition, and book expenses for his son, and had failed to do so, warranting a finding of contempt. We do conclude, however, that the trial court erred in calculating the amount of expenses awarded.
 {¶ 20} The separation agreement states that the parties are each responsible for 50% of "all costs incurred for tuition, room, board and books for the children's college education to enable the children to obtain a bachelor's degree." Based on this provision, the trial court correctly required Davis to pay one-half of the tuition reimbursement to ROTC for the fall quarter of 2004 and the spring quarter of 2005 ($4,910 divided by two, which equals $2,455). Whether Davis agreed with his son's decision to change majors is irrelevant — the separation agreement does not condition payment on parental approval.
 {¶ 21} The trial court also did not err in requiring Davis to pay $3,300 for food for the fall, winter, and spring quarters of the 2004/2005 academic year. This item was properly included within the "board" costs. While the evidence on food costs could have been more definitive, Zornes stated that she had receipts, and Davis failed to ask for the receipts during the hearing. Accordingly, the trial court correctly ordered payment of one-half of these costs ($3,300 divided by two, or $1,650).
 {¶ 22} The trial court erred, however, in calculating the amount of "rent" to be included and by adding internet access into the sum to be paid. In this regard, Zornes submitted a figure of $4,950 for rent from June, 2004, through August, 2005. This was a period of fifteen months. Andy testified that his apartment rent was $330 per month. However, the award improperly includes several months when Andy was not attending college.
 {¶ 23} The separation agreement only obligates the parents to provide for room and board for the children's college education, not for periods when the children are not attending school. Andy could have lived in a college dorm and could have come home for the summer to conserve money, but he did not. Andy further chose to "hang out" and "rest," rather than working at a job to help defray expenses. His parents did not have that option, but they were also not responsible for paying his expenses during summer break.
 {¶ 24} Zornes claimed $820.34 for the electric bill for the apartment, but did not specify the time frame of the payments. Presumably, this amount was for fifteen months also and would be incorrect, for the reasons just mentioned.
 {¶ 25} In addition, Zornes claimed that she had paid $10 per month for Andy's cell phone, for a total amount of $120 through April 30, 2005. At ten dollars per month, this would be a period of twelve months, which would have included summer break. Again, the phone expense was not required to be paid during times that Andy was not attending college.
 {¶ 26} The final issue in this regard pertains to $610.68 claimed for internet access through April 30, 2005. Neither Andy nor Zornes testified that this expense was required for Andy's college education. In fact, they did not testify about internet access at all. Davis was asked during cross-examination whether he had any evidence that Andy did not have to pay $610.68 for online access which was necessary for school. Davis answered "no" to this question. However, Davis did not have the burden of proving that internet access was necessary, and the attorney's statement was not based on any fact in evidence.
 {¶ 27} "In a civil contempt proceeding, the movant bears the initial burden of proving by clear and convincing evidence that the other party violated a court order. * * * `Clear and convincing evidence' is a degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases. * * * `Clear and convincing evidence' is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."Allen v. Allen, Franklin App. No. 04AP-1341, 2005-Ohio-5993, at1|21 (citations omitted).
 {¶ 28} Under the circumstances, there was not clear and convincing evidence that Davis violated the court order by failing to pay for internet access. The separation agreement required payment only for "all costs * * * for tuition, room, board, and books." The agreement does not mention internet access, and there was no evidence that this was an item included by the college as part of the tuition bill.
 {¶ 29} Separation agreements are contracts, and are "subject to the same rules of construction that apply to other contracts."Tapp, 105 Ohio App.3d at 162. As a result, the trial court has the power, when enforcing a separation agreement, "to hear the matter, clarify any confusion over the interpretation to be given to a particular clause, and resolve the dispute. * * * The court, however, cannot read language or terms into a contract." Matter of Howard (Nov. 1, 1993), Clermont App. No. CA-93-016, 1993 WL 437690, *2 (citations omitted). By adding a requirement to pay internet access, the trial court in the present case improperly ventured beyond the clear terms of the contract. Compare She v. Huang (Sept. 22, 1998), Franklin App. No. 98AP-153, 1998 WL 655409, *3 (items like refrigerators or other household amenities are not valid educational costs).
 {¶ 30} In Allen, the Tenth District Court of Appeals pointed out various errors in the magistrate's decision, and noted that its inability to reconcile the evidence with the magistrate's calculations undermined its confidence in the accuracy of the magistrate's findings.2005-Ohio-5993, at ?21. We reach the same conclusion in the present case. Although we agree with the magistrate and trial court about the tuition reimbursement and the "board" expense, the rest of the trial court findings are unsupported by either the evidence or the language of the contract.
 {¶ 31} Accordingly, Davis's First Assignment of Error is sustained in part, and overruled in part. The monetary award is reversed, and this cause is remanded for further proceedings to determine the costs incurred for apartment rent, electricity, and cell phone usage during the fall quarter of 2004, and the winter and spring quarters of 2005. These sums should be added to the $4,105 already awarded for tuition reimbursement and food, to arrive at the total amount that Davis owes. However, the judgment of contempt, as well as the fine and term of imprisonment that were imposed, are affirmed.
 III {¶ 32} Davis's Second Assignment of Error is as follows:
 {¶ 33} "THE TRIAL COURT ERRED IN FAILING TO PROPERLY CONSIDER EVIDENCE REGARDING AN OFFSET FOR APPELLANT TOWARDS HIS SHARE OF COLLEGE EXPENSES FOR THE PARTY'S [SIC] SON WHEN THE TESTIMONY FROM ALL PARTIES HAD DEMONSTRATED THAT APPELLANT IN GOOD FAITH BASED UPON THE ASSURANCES OFAPPELLEE, HAD GIVENTHE PARTY'S [SIC] SON ATRUCKFOR WHICH APPELLANT WAS TO RECEIVE CREDIT TOWARDS HIS PORTION OF THE SON'S COLLEGE EXPENSES."
 {¶ 34} At the hearing, Davis claimed that while he was talking on the telephone to his son, Andy, he heard Zornes in the background. According to Davis, Zornes said that if Davis would give Andy a 1997 Ford Ranger truck, they could negotiate. Andy also recounted a similar conversation, during which his mother told him to discuss an option with Davis. The option was that Davis would give Andy the truck and repay a $3,500 loan in exchange for repayment of the $6,500 loan by Zornes. Andy indicated that the "deal" never went through, and that his father later gave him the truck, valued at $4,000, as a gift. Andy also gave Davis his own vehicle, which Davis later sold for $500.
 {¶ 35} Once a movant has established a prima facie case by clear and convincing evidence, the non-moving party has the burden of either rebutting the initial showing of contempt or establishing an affirmative defense by a preponderance of the evidence. Allen, Franklin App. No. 04AP-1341, 2005-Ohio-5993, at ?16. See, also, Brown v. Brown (July 18, 1988), Montgomery App. No. 10931, 1988 WL 76188, *6.
 {¶ 36} Unfortunately for Davis, the evidence falls short of demonstrating that the parties had a "deal" to credit him for the value of the truck. Even accepting Davis's own testimony as true, all Davis heard was that Zornes had offered to negotiate if Davis gave Andy a truck. An offer to negotiate implies that a later agreement will be reached on terms that are acceptable to both parties. It does not indicate that an agreement has been reached. Because Davis did not testify as to any future terms that the parties agreed upon, he failed to establish his defense by a preponderance of the evidence. Accordingly, Davis's Second Assignment of Error is overruled.
 {¶ 37} As an aside, we note that Zornes contends that Davis waived this issue by failing to refer specifically in his objections to a setoff for the car/truck trade. After reviewing the objections to the magistrate's decision, we find that the issue was sufficiently raised.
 V {¶ 38} Zornes's sole cross-assignment of error is as follows:
 {¶ 39} "THE TRIAL COURT ABUSED ITS DISCRETION BY IMPLEMENTING A RULE OF COURT WHICH PRECLUDES A PREVAILING PARTY FROM ADEQUATELY OBTAINING ATTORNEY FEES FROM AN OPPOSING PARTY HELD IN CONTEMPT."
 {¶ 40} As we noted, the magistrate awarded $200 in attorney fees to Zornes, based on the application of Loc. R. 14(H)(2), which allows attorney fees of $200 for contempt motions. In the decision, the magistrate indicated that if a higher award is desired, an attorney must file a motion and present independent evidence regarding the reasonableness of the fees. Zornes contends that she presented evidence of $1,245 in fees, and that the magistrate abused his discretion by failing to consider this evidence. In this regard, Zornes relies on the proposition that a party would not know the number of hours invested in obtaining an order of contempt until after the particular matter is concluded, including an appeal, if one is taken.
 {¶ 41} We conclude that Zornes waived the alleged error by failing to object to the magistrate's decision. See, e.g., Gevedon v. Gevedon,167 Ohio App.3d 450, 455-456, 2006-Ohio-3195, 855 N.E.2d 548, at ?19 (failure to object to magistrate's decision waives error). We have considered civil plain error in limited situations, but only where the error seriously affects the " `basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the judicial process itself.' " Id. at ?20. This case does not present such a situation. In the first place, the alleged error could have been brought to the trial court's attention if Zornes had filed objections. Zornes could also have filed a motion for additional attorney fees, but she chose not to do that, either. She failed to take either course of action, and instead waited until appeal to assert an objection. Under the circumstances, we see nothing that has challenged the basic fairness or integrity of the judicial process. Neither the trial court, in this particular case, nor the local rule, in general, precludes a party from obtaining an award of attorneys fees in excess of $200 if one is warranted.
 {¶ 42} Zornes's sole cross-assignment of error is overruled.
 V {¶ 43} Davis's First Assignment of Error having been sustained, in part, and overruled, in part, his Second Assignment of Error having been overruled, and Zornes's sole cross-assignment of error having been overruled, the judgment of the trial court is Reversed, in part, and Affirmed, in part. That part of the order finding Davis in contempt and imposing sanctions is Affirmed; that part of the order establishing the amount of Davis's obligation to reimburse Zornes is Reversed; and this cause is Remanded for further proceedings to determine the amount owed for apartment rent, electricity, and cell phone usage for the fall quarter of 2004, and the winter and spring quarters of 2005. These sums should be added to the $4,105 already awarded for tuition reimbursement and food, to arrive at the total amount that Davis owes.
BROGAN and GRADY, JJ., concur.