OPINION
{¶ 1} Plaintiff-appellant, Wendy Gehring, appeals the decision of the Warren County Common Pleas Court, Domestic Relations Division, regarding child custody. We affirm the decision of the trial court.
 {¶ 2} Appellant and defendant-appellee, Gary Gehring, were married on April 30, 1994. Three children were born of the marriage. The parties' sole source of income came from their vending machine business.
 {¶ 3} On September 17, 2001, appellant filed a civil protection order against appellee in the Warren County Domestic Relations Court pursuant to an alleged domestic violence incident. The court issued the civil protection order and granted temporary custody of the children to appellant. Appellant then moved with the children to her parents' home in the Toledo area. On October 25, 2001, appellant dismissed the domestic violence charge against appellee.
 {¶ 4} Appellant filed for divorce in October 29, 2001. Following a hearing, the trial court rendered its decision on December 31, 2002 naming appellee as the residential parent and legal custodian of the parties' children. The judgment entry and decree of divorce was entered on February 18, 2003. Appellant appeals from the decision raising the following assignment of error:
 {¶ 5} "The trial court abused its discretion when it named appellee Gary Gehring residential parent and legal custodian."
 {¶ 6} In custody matters, a trial court has wide latitude in considering all the evidence before it, and such a decision must not be reversed absent an abuse of discretion. Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 7} The trial court must follow the procedure outlined in R.C. 3109.04 when determining the allocation of parental rights and responsibilities. R.C. 3109.04(A). The trial court's primary concern is a child's best interest when making an initial allocation. R.C. 3109.04(B)(1). Therefore, the trial court must consider all relevant factors related to the children's best interest, including the following factors specified by R.C.3109.04(F)(1):
 {¶ 8} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 9} "(b) If the court has interviewed the child in chambers
 {¶ 10} * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 11} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 12} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 13} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 14} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 15} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 16} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
 {¶ 17} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 18} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 19} The trial court made extensive findings related to each applicable statutory factor, concluding that it was in the children's best interest to designate appellee as the residential parent. Appellant argues that the trial court erred in determining that it was in the best interest of the children to designate appellee as the residential parent.
 {¶ 20} Appellant first asserts that the trial court did not give due consideration to the fact that she was the primary caretaker of the children. Appellant also alleges that the trial court placed a greater emphasis on the children's physical and financial needs rather than their emotional needs when rendering its decision. Finally, she alleges that the trial court based its decision as to appellant's ability to care for the children on possible future circumstances instead of present circumstances.
 {¶ 21} A parent's role as the primary caretaker is not the only relevant factor to be considered when making the best interest determination. Seibert v. Seibert (1990),66 Ohio App.3d 342, 345. We have stated that "R.C. 3109.04(F) precludes placing a presumptive quality on this factor." Marsh v. Marsh
(July 30, 2001), Butler App. No. CA2000-07-138, citing to Clontzv. Clontz (Mar. 9, 1992), Butler App. No. CA91-02-027.
 {¶ 22} The trial court heard evidence relating to the primary caretaker factor. It was but one of many factors that it took into consideration. Appellant correctly states in her brief that the trial court found that "all three children have closely bonded to each parent" and that appellant was "the emotionally nurturing parent." The trial court heard testimony that appellant worked from home to help in the parties' business. It also heard testimony that the children were in childcare on these days. The trial court considered appellant's duties as the primary caretaker and her bond with the children. Appellant's assertion that the trial court did not consider the primary caretaker factor is without merit.
 {¶ 23} Appellant's assertion that the trial court erred by placing more emphasis on the children's financial and physical needs than their emotional needs is also without merit. The record before the trial court was clear that appellant had difficulty completing daily tasks. There was testimony that she lied to her husband about opening new accounts and servicing accounts in the parties' vending business. There was also testimony that she attempted to have the children perpetuate one of the lies. Appellant also admitted to hiding mail, some of which included foreclosure notices on the family home. The trial court also heard testimony that appellant's telephone service had been terminated at one point since moving to the Toledo area.
 {¶ 24} In its decision, the trial court aptly stated, "What is unclear is whether Wife's [appellant's] depression has caused her to be an irresponsible parent or whether she just simply can't deal with any form of stress. Unfortunately, parenting is an occupation that is full of stress and her reaction to stress has been to stick her head in the sand and pretend that it will all go away by itself. She miserably failed to see to it that the children were properly immunized to attend school. Despite receiving two different warning letters, she ignored the clear commands that the children could not go to school without these immunizations. Only after continued prompting by the Court, her counsel, and Husband did she finally follow through with the immunizations for the children. * * * Every time the parties had a financial crisis, she simply hid the bills from her Husband A certain amount of this behavior can be readily excused because of her fear of confronting Husband with unpleasant news. However, the Court has a very real concern that when confronted with a "crisis" in raising the children that Wife will simply not face the matter and act irresponsibly. Her behavior in hiding the mail is one very tangible example of how she simply cannot or will not deal with stress in a straightforward manner."
 {¶ 25} The trial court did consider the emotional needs of the children, but felt that their daily needs must be met as well. The trial court did not abuse its discretion in finding as it did.
 {¶ 26} Appellant's final assertion that the trial court erroneously based its decision as to appellant's ability to care for the children on possible future circumstances instead of present ones is also without merit. Within this argument, appellant maintains that the trial court did not fully consider the abuse she suffered at the hands of appellee.
 {¶ 27} As we discussed earlier, the trial court did give consideration to appellant's present ability to care for the children. Appellant relies upon Seibert, 66 Ohio App.3d 342, arguing that it "made clear that a custody award based upon `future possibilities rather than present factors' was contrary to the purpose of R.C. 3109.04, which is to award custody based on the present circumstances." Appellant's reliance on Seibert
is misplaced. Unlike Seibert, appellant continued to exhibit problems with caring for the needs of the children, even after moving away from appellee. She did not have the children immunized, her phone service was turned off and she testified that some bills were not paid.
 {¶ 28} The trial court did note that appellee had exhibited abusive behavior towards appellant.[1] It grappled with this fact in weighing the best interests of the children. It stated that "the Court has to weigh this as the only negative factor on Father's side of the ledger against Mother's failure to immunize the children and her demonstrated inability to manage money and operate a household budget."
 {¶ 29} It later stated that "though the Court is reluctant to give any abusive man custody of small children such as here, the Court must focus solely on what is the best for the children." It found that "[h]ere, the scale tips slightly towards" appellee as residential parent. The trial court believed "that he will meet the day to day needs of the children better than Wife can."
 {¶ 30} It is obvious that the trial court did give great consideration to all of the pertinent factors before it and made a difficult decision. We see no abuse of discretion. Appellant's assignment of error is overruled.
 {¶ 31} Judgment affirmed.
Young and Walsh, JJ., concur.
[1] We note that when asked during her cross-examination, appellant admitted that appellee was a good father and that he had never hurt the children.