OPINION
{¶ 1} Defendant-appellant, Gary Gamble, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, dividing property and awarding custody in a divorce case. For the reasons outlined below, we affirm in part, reverse in part, and remand.
 {¶ 2} Gary and plaintiff-appellee, Amy Gamble, were married on May 10, 2003. The marriage produced one child, son Dominic, born August 23, 2004. On November 14, 2005, *Page 2 
Amy filed a complaint in divorce. The only issues left unsettled prior to trial included custody, equity in the marital home, and division of personal property. Following a two-day trial, the trial court issued a decision on August 30, 2006. The court entered a final judgment and divorce decree on October 5, 2006. This appeal followed.
 {¶ 3} Appellate review of trial court determinations in domestic relations cases generally entails the abuse of discretion standard.Booth v. Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. The abuse of discretion standard is employed in reviewing orders relating to visitation, child custody, and division of marital property.Booth at 144. "Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." (Citation omitted.) Id. We are mindful of these considerations in addressing Gary's three assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT HELD THAT THE MARITAL COUPLE HAD NOT RECEIVED ANY WEDDING PRESENTS."
 {¶ 6} Gary argues that the trial court abused its discretion in ruling that there was no dispute regarding certain items of personal property claimed by Amy as separate property. Gary maintains that he presented evidence at trial establishing that a number of these items were received by the couple as wedding gifts. He concludes that the trial court erred in determining which of the disputed items were separate property and which were marital property. *Page 3 
 {¶ 7} A trial court is required to establish which property is marital property and which property is separate property and equitably divide the property between the spouses in accordance with the provisions of R.C. 3105.171. R.C. 3105.171(B). Such classification of the parties' property is a factual inquiry and will not be reversed where supported by some competent, credible evidence. Weisbecker v. Weisbecker, Butler App. No. CA2005-10-421, 2006-Ohio-5840, ¶ 9.
 {¶ 8} "Marital property" includes all real or personal property or interest in real or personal property that was acquired by either or both of the spouses during the marriage, as well as all income and appreciation on separate property resulting from the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage. R.C. 3105.171(A)(3)(a)(i) — (iii). Marital property is distributed either equally or equitably between the parties, subject to the circumstances and the discretion of the trial court. R.C.3105.171(C)(1).
 {¶ 9} Conversely, "separate property" includes any real or personal property or interest in real or personal property that was acquired by one spouse before the marriage. R.C. 3105.171(A)(6)(a)(ii). "Separate property" also includes gifts acquired by one spouse after the date of marriage provided that the property is proven by clear and convincing evidence to have been gifted to only one spouse. R.C.3105.171(A)(6)(a)(vii). Separate property must be disbursed to its owner, unless the trial court chooses to make a distributive award from such property. R.C. 3105.171 (D).
 {¶ 10} Amy and Gary each presented testimony and exhibits concerning which items of property in the house they believed to be separate property and which items they believed to be marital property. Amy submitted Exhibit 8A, which contained a document entitled "Household Goods and Furnishings Form." This form was a detailed listing of personal property at the marital residence. Items that Amy marked with an "M" on the form were *Page 4 
classified by her as marital property and items marked with an "H" were classified by her as Gary's separate property.
 {¶ 11} In addition, items Amy marked with a "W" on the Household Goods and Furnishings Form were claimed to be her separate property because, according to Amy, they were either premarital purchases she made or gifts given solely to her either before or during the marriage. These included a Sony DVD player, RFA modular, luggage, glasses, kitchen appliances, pots and pans, refrigerator, washer and dryer, bedroom furniture, rocking chairs, office furniture, white dresser, two white shelves, closet organizers, grill, patio furniture, vacuum, certain wall pictures, 36" Sony Trinitron television, Sony DVD Dream System, Sony alarm clock, and 27" GE television. In its August 2006 decision, the trial court found that Gary did not challenge Amy's claim to these items. According to the record, however, this finding was in error.
 {¶ 12} At trial Gary submitted Exhibit F, which was his suggested division of household goods and furnishings. Gary maintained that everything listed in Exhibit F was marital property except for Amy's bedroom set and the Sony DVD Dream System. A number of the items claimed by Amy as her separate property in Exhibit 8A were classified by Gary as marital property in Exhibit F, as appears more fully hereinafter.
 {¶ 13} Further inconsistencies existed regarding whether or not the couple received some of these items as wedding gifts, thus making them marital property. Amy conceded that Gary's mother gave the couple dishes and silverware. Other than that, Amy testified that the couple did not accept wedding gifts because they were married on a cruise. According to Amy, she and Gary invited people to join them on the cruise in lieu of wedding gifts. Amy also denied that there were any wedding showers where gifts were given to the couple. She testified that she had a wedding shower "for herself" prior to marriage.
 {¶ 14} On the other hand, Gary testified that the couple had many showers and *Page 5 
received numerous wedding gifts, some of which were mailed to the couple and arrived in boxes on the front porch of their home. He claimed that the parties registered for gifts for the wedding and received items of property off of this registry. Gary's mother testified that she attended a bridal shower for the couple and that the couple received wedding gifts. A friend and coworker of Gary's, Terri Lang, also testified that she and other coworkers pooled their money and gave Gary and Amy a gift card as a wedding gift.
 {¶ 15} We observe that the trial court revealed on the record its skepticism towards Amy's claim that the couple did not receive wedding gifts. Addressing Gary's attorney at trial, the judge stated: "I will also tell you that when — I'm just being very honest here — that when [Amy] testified that they didn't receive any wedding gifts, I put a little note by that in my notes so I found that incredulous, so * * * Let's don't dwell on it. Everybody receives wedding gifts unless you run away and elope." On appeal, Gary asserts that this comment by the trial court dissuaded him from pursuing the issue further at trial.
 {¶ 16} Clearly there was a dispute over certain items of personal property in the marital residence, and this dispute was largely connected to whether or not the parties received wedding gifts. Furthermore, after thoroughly reviewing the record, we find that the trial court erred in awarding certain items of personal property to Amy where there was no competent, credible evidence to support that the items were Amy's separate property. Weisbecker, 2006-Ohio-5840 at ¶ 9.
 {¶ 17} Amy submitted retail receipts in Exhibits 8A through 8L to support that the items represented in the receipts were her separate property because they were premarital purchases made by her. She testified that with regards to any item on the Household Goods and Furnishings Form marked with a "W," she had a corresponding retail receipt in Exhibits 8A through 8L for the item. This was not the case.
 {¶ 18} Exhibits 8A through 8L contained receipts for the following items: file cart, *Page 6 
desk, four-shelf ètagère, night stand, queen bed, armoire, vacuum, washer and dryer, aerobed, refrigerator, 36" Sony Trinitron television, Sony CD/DVD player, Sony Compact AV system, patio furniture, and cordless phones. These receipts were all dated prior to the date of marriage, and all items represented therein appear to have been paid for by a credit card belonging to Amy with the exception of the patio furniture. Amy testified that the patio furniture was actually a gift given to her by her sister prior to marriage. Therefore, regarding the items supported by receipts in the record, there was competent, credible evidence to support the trial court's determination that these items were Amy's separate property and she was entitled to them.
 {¶ 19} In addition, Amy testified that she owned the white dresser, two white shelves, closet organizers, all but two of the wall pictures, Sony alarm clock, and 27" GE television while she lived at her parents' house prior to knowing Gary. Gary did not dispute Amy's assertions regarding these particular items of property.
 {¶ 20} The following items which Amy claimed to be separate property in the Household Goods and Furnishings Form that were not supported by receipts or other evidence, and which Gary claimed to be marital property in Exhibit F, include the following: luggage, glasses, kitchen appliances, pots and pans, rocking chairs, certain office furniture (noncordless phone, leather chair and mat, safe, great planes,[1] Dell computer, Sony digital camera), grill, and two wall pictures. The trial court's awarding of these disputed items, for which Amy offered no retail receipts or other evidence in support of her claim that they were separate property, was not supported by competent, credible evidence.Weisbecker at ¶ 9.
 {¶ 21} We conclude that the trial court abused its discretion in ruling that there was no dispute as to certain items of personal property and in awarding Amy those items of personal *Page 7 
property for which there was no competent, credible evidence in support of her separate property claim. In the absence of such evidence, the trial court was obligated to establish which items of disputed property were separate property and which were marital property and equitably divide the property in accordance with the provisions of R.C. 3105.171. Gary's first assignment of error is sustained.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT NAMED PLAINTIFF-APPELLEE TO BE THE RESIDENTIAL CUSTODIAN OF THE PARTIES' SON OR DID NOT GRANT APPELLANT EQUAL VISITATION TIME WITH HIS CHILD."
 {¶ 24} Gary contends that the trial court abused its discretion in naming Amy the residential custodian of Dominic or, in the alternative, in failing to grant him equal visitation time with Dominic. He cites as a basis for this contention the fact that he expressed a willingness to facilitate visitation with Amy.
 {¶ 25} We first address the custody issue. R.C. 3109.04 governs the awarding of parental rights and responsibilities. In making this determination, the primary concern is the best interest of the child.Stan v. Stan, Preble App. No. CA2003-01-001, 2003-Ohio-5540, ¶ 9. The trial court considers all relevant factors, including but not limited to those enumerated in R.C. 3109.04(F)(1). One factor for consideration is "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights[.]" R.C.3109.04(F)(1)(f). Gary focuses on this factor in challenging the trial court's decision to name Amy the residential custodian of Dominic.
 {¶ 26} After reviewing the record, we do not find that the trial court abused its discretion in naming Amy the residential parent. Gary's willingness to facilitate equal visitation, while commendable, is not dispositive of the matter. The trial court considered the *Page 8 
evidence before it in fashioning the custody award. The court heard testimony regarding Amy's concerns about Gary's Ritalin abuse. Amy also testified about fearing for her physical safety at times during arguments with Gary. She also informed the court that Gary received psychiatric treatment as a teenager, including inpatient hospitalization.
 {¶ 27} Furthermore, Amy testified that Gary shared a bedroom with Dominic at Gary's residence (actually his grandmother's house) and permitted women to sleep in the same room while Dominic was present. Gary's ex-girlfriend, Ariel Hendricks, supported this allegation when she testified that she spent numerous weekends at Gary's house while they dated and slept in the same room as Dominic. Hendricks also testified to smoking marijuana with Gary three or four times a week during the course of their relationship. In addition, Hendricks stated that Gary and his grandmother would speak negatively of Amy in front of Dominic, including saying Amy was crazy. There was also testimony that members of Gary's extended family had significant drug abuse problems. Finally, witnesses from Dominic's daycare testified about Gary's inappropriate comments about the divorce made in front of Dominic to them and to other parents.
 {¶ 28} Upon testifying, Gary denied the allegations about his use of Ritalin and marijuana and about having sexual relations with Hendricks while Dominic was in the bedroom. The trial court is in the best position to hear the evidence and adjudge the credibility of the witnesses in deciding custody issues. As this court has previously observed:
 {¶ 29} "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record."Stan at ¶ 7, quoting Pater v. Pater (1992), 63 Ohio St.3d 393-96. *Page 9 
 {¶ 30} The trial court was presented with evidence that Gary had a good relationship with Dominic and cared for his son. The court found Gary to be a loving and capable parent. Nonetheless, in considering all of the evidence presented, the court determined that naming Amy the residential parent was in Dominic's best interest. In view of the evidence before the trial court, we cannot say that this constituted an abuse of discretion.
 {¶ 31} Next we address the visitation issue. The granting of visitation rights is controlled by R.C. 3109.051. The only restriction placed on the trial court by this provision is that a visitation order must be "just and reasonable." R.C. 3109.051(A). Accordingly, the trial court has broad discretion in determining matters related to visitation.Appleby v. Appleby (1986), 24 Ohio St.3d 39, 41. The trial court's discretion must be exercised in a manner which protects the best interest of the child. Weaver v. Weaver (Mar. 6, 2000), Warren App. No. CA99-02-022, at 4, 2000 WL 263207. In framing a visitation order consistent with the best interest of the child, the trial court must consider the factors listed in R.C. 3109.051(D).
 {¶ 32} Based upon the evidence, the trial court did not abuse its discretion in declining to award equal visitation to the parties. The parties attempted equal visitation with Dominic from January 2006 until the trial court's August 2006 decision. It is quite clear that such a setup was not practicable for the parties and worked to Dominic's detriment. There was an abundance of testimony regarding difficulties the parties experienced in dealing with one another during this time of equal visitation. One result of these difficulties was that every time the parties exchanged Dominic the exchange was videotaped. Exchanges also had to take place at Dominic's daycare and at the police station due to the problems between the parties. Dominic would sometimes become very upset during these exchanges. The parties exhibited antagonism in conversing with one another, and were court ordered to communicate through e-mail. The animosity between the parties during their frequent contacts with one another during this equal visitation period imposed stress on Dominic, who *Page 10 
began exhibiting worrisome changes in behavior and started acting out at home and at daycare. The trial court found such circumstances were not in the best interest of Dominic.
 {¶ 33} The visitation schedule fashioned by the trial court awarded Gary visitation with Dominic on alternate weekends from 5:00 p.m. on Thursday to 6:00 p.m. on Sunday, and every Tuesday from 5:00 p.m. to 8:00 p.m. All holidays and vacations were allocated in accordance with the Butler County Standard Parenting Time order DR610, unless the parties agreed otherwise. We find this to be a just and reasonable visitation schedule which accords with the best interests of Dominic in view of the parties' inability to amicably exercise equal visitation time. It is also just and reasonable in view of the evidence regarding Gary's disputes with Dominic's daycare staff and the questions surrounding the living environment at Gary's residence.
 {¶ 34} We conclude that the trial court did not abuse its discretion in naming Amy the residential parent or in allocating visitation time. Gary's second assignment of error is overruled.
 {¶ 35} Assignment of Error No. 3:
 {¶ 36} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ITS CALCULATION OF THE AMOUNT OF MARITAL EQUITY IN THE RESIDENCE TO BE DIVIDED BETWEEN THE PARTIES."
 {¶ 37} Gary maintains that the trial court incorrectly determined the equity in the marital residence based upon figures not supported by the evidence.
 {¶ 38} The parties stipulated that the marital residence had a fair market value of $175,000. From this amount, the trial court subtracted the mortgage balance as of March 1, 2006, which was $147,966. This resulted in an equity of $27,034. From this amount, the trial court subtracted Amy's premarital contribution used for the down payment on the house in the amount of $12,500 (rounded up from $12,454.68). The trial court found that Amy was *Page 11 
entitled to this amount as she was able to trace it to her premarital bank account. After this amount was deducted, the remaining $14,534 in equity was divided equally between the parties. Each was thus awarded $7,267 as their respective share of the equity in the marital residence.
 {¶ 39} The only amount in dispute in the above calculations is the mortgage balance. Gary argues that the trial court should have used the mortgage balance as of November 2005 when the parties separated, which was $133,759.46. However, the trial court determined that the mortgage balance as of March 1, 2006 was to be used in the equity calculation.
 {¶ 40} First, we observe that the record does not indicate that Gary objected before the trial court regarding the court's choice of valuation date. Generally, a party may not raise any issue or error for the first time on appeal that the party could have called to the trial court's attention at a time when the trial court could have ruled on the issue, or corrected the error, or avoided the error altogether.State v. Awan (1986), 22 Ohio St.3d 120, 122. Therefore, Gary has waived this argument for purposes of appeal. Id. Second, we note that the trial court has discretion to choose the property valuation date it deems equitable under the circumstances and is not obligated to use a date offered by one party or even agreed upon by both parties. Cf. Berish v.Berish (1982), 69 Ohio St.2d 318, 319-21.
 {¶ 41} We conclude that the trial court did not abuse its discretion in calculating the amount of marital equity in the couple's residence. Gary's third assignment of error is overruled.
 {¶ 42} Judgment affirmed in part, reversed in part, and remanded.
BRESSLER, P.J., and POWELL, J., concur.
[1] The record does not indicate exactly what item or items Gary is referring to by the term "great planes" in his Exhibit F under the heading "Office." *Page 1