OPINION
{¶ 1} Defendant-appellant, Kyla Owens-Haynes ("Kyla"), appeals the decision of the Clermont County Common Pleas Court, Domestic Relations Division, dividing property and awarding custody in the parties' divorce action. We affirm the decision of the trial court.
 {¶ 2} Kyla and plaintiff-appellee, Scott Haynes ("Scott"), were married on July 24, 2004. The couple had one child, daughter Meredith, who was born in October 2005 with a *Page 2 
club foot that required her to wear a cast, special shoes, and undergo orthopedic surgery. Both Kyla and Scott were involved in providing the necessary care for Meredith. Kyla and Scott separated in January 2006, and Scott filed for divorce shortly after.
 {¶ 3} The final hearing on divorce, property division, and child custody was held on June 19, 2007. The magistrate issued a decision dividing the property and designating Scott as the sole residential parent and legal custodian. Kyla filed objections to the magistrate's decision. The trial court overruled Kyla's objections and adopted the magistrate's findings in full. Kyla appeals the decision of the trial court, raising three assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED BY NOT ALLOWING COUNSEL TIME FOR PREPARING FOR TRIAL."
 {¶ 6} Kyla argues that the magistrate did not provide her counsel with sufficient time to prepare for trial. Essentially, Kyla asserts that the magistrate erred when it granted a continuance for 35 days instead of the requested 90 days. This argument lacks merit.
 {¶ 7} The decision to grant or deny a motion for continuance is a matter within the sound discretion of the trial court. Ellison v. VonStein (June 28, 1993), Clinton App. No. CA93-01-002; State v.Payne, Butler App. No. CA2006-04-099, 2007-Ohio-1553, ¶ 4. Absent an abuse of discretion, a reviewing court will not disturb a trial court's decision denying a motion for a continuance. Payne at ¶ 4, citingState v. Grant, 67 Ohio St.3d 465, 479, 1993-Ohio-171. An abuse of discretion requires a finding that the trial court's decision is unreasonable, arbitrary, or unconscionable. Unger v. Unger, Brown App. No. CA2003-10-013, 2004-Ohio-7136, ¶ 32. In reviewing the denial of a motion for continuance, this court must weigh the potential prejudice to the defendant against the trial court's "right to control its own docket, the parties and the public's interest in the prompt and efficient administration of justice, and the potential prejudice that could result to the moving party if the request is denied."State *Page 3 
denied." State v. Gorham, Butler App. No. CA2006-08-195, 2007-Ohio-6028, ¶ 10.
 {¶ 8} Kyla retained her current counsel on May 1, 2007.[1] On May 2, 2007, Kyla moved for a 90-day continuance to prepare for the upcoming final hearing. The magistrate determined that a 90-day continuance was unnecessary, and instead, granted a 35-day continuance. Kyla did not object to the magistrate's decision denying the 90-day continuance during the final hearing or in her Civ. R. 53 objections to the magistrate's decision.
 {¶ 9} Kyla claims that the additional 55 days were necessary to "present all of the issues and to investigate" the matter prior to the final hearing. However, Kyla did not provide any evidence to the trial court as to how she was prejudiced by the lack of extra time. In fact, Kyla was able to obtain all discovery requested prior to the final hearing, including a parenting investigation and a psychological evaluation.
 {¶ 10} After reviewing the record, we find that the magistrate did not abuse its discretion by denying a 90-day continuance, and therefore, Kyla's first assignment of error is overruled.
 {¶ 11} Assignment of Error No. 2:
 {¶ 12} "THE TRIAL COURT ERRED BY NOT EQUITABLY DIVIDING ALL OF THE ASSETS OF THE PARTIES."
 {¶ 13} Kyla raises three issues with respect to the trial court's division of property. First, Kyla argues that the trial court failed to consider the value of Scott's business, Haynes Design Services, when making a final division of the assets. Next, Kyla argues that the court erred when it determined that Scott did not have any of her personal property. Finally, Kyla argues that the court erred when it awarded Scott the residence. These arguments lack merit. *Page 4 
 {¶ 14} A trial court is vested with broad discretion in dividing marital assets. Middendorf v. Middendorf, 82 Ohio St.3d 397, 401,1998-Ohio-403. The trial court will divide marital property equally unless doing so will be inequitable, in which case, the court will divide the property equitably. R.C. 3105.171(C). "A trial court must have discretion to do what is equitable upon the facts and circumstances of each case." Berish v. Berish (1982), 69 Ohio St.2d 318, 320, citingCherry v. Cherry (1981), 66 Ohio St.2d 348, 355. This requires the reviewing court to "examine the overall equity of the division * * *, and not to conduct a line-byline analysis of every item of marital property." Dewsnap v. Dewsnap, Clermont App. No. CA2007-09-094,2008-Ohio-4433, ¶ 16, quoting Waller v. Waller, Jefferson App. No. 04 JE 27, 2005-Ohio-4891, ¶ 7. The trial court's division of property should be viewed as a whole in determining whether the court divided the parties' marital assets in an equitable and fair manner. Briganti v.Briganti (1984), 9 Ohio St.3d 220, 222.
 {¶ 15} A trial court's decision with regard to the division of marital property will not be reversed absent an abuse of discretion.Blakemore v. Blakemore, 5 Ohio St.3d 217, 219. An abuse of discretion requires a finding that the trial court's decision is unreasonable, arbitrary, or unconscionable. Unger at ¶ 32. An appellate court may not substitute its judgment for that of the trial court. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 131. The mere fact that a property division is unequal does not, standing alone, amount to an abuse of discretion. Brown v. Brown (July 21, 1997), Butler App. No. CA97-01-010, WL 411615 at *2.
 {¶ 16} First, Kyla argues that the trial court failed to equitably divide property because it did not consider the value of Scott's business, Haynes Design Services, when making a final division of the assets.
 {¶ 17} Haynes Design Services, a drafting business Scott created, was awarded to him as part of the equitable division of property. The only evidence presented regarding the *Page 5 
business was provided by Scott when he testified as to why he left his job in order to create the business, the business' small profit margin, and the negative impact the divorce proceedings had on his efforts to grow the business into "a real company."[2] Kyla never raised the business as an issue to be considered by the magistrate, nor did she present any evidence through direct examination, cross-examination, or during closing arguments that the business had any value.
 {¶ 18} After weighing all of the evidence provided, the trial court determined that it was equitable to award Scott the business. We find no error in the trial court's decision.
 {¶ 19} Second, Kyla argues that the court erred in finding that a full division of property was complete. Specifically, Kyla claims that the court erred in finding that Scott did not retain any of her personal property.
 {¶ 20} The trial judge has the best opportunity "to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis v. Flickinger,77 Ohio St.3d 415, 418, 1997-Ohio-260. An appellate court "should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." Id. at 419.
 {¶ 21} Kyla gave Scott a document listing 292 items that she claimed were still in his possession. Scott testified that all of the items were returned and that he did not have any of her personal property.
 {¶ 22} Based on extensive testimony provided by both parties, the court determined that Scott did not have any of Kyla's property. Because there is evidence to support the court's decision, and weighing the credibility of witness testimony is a matter for the trial court, we find no error in the trial court's decision. *Page 6 
 {¶ 23} Third, Kyla argues that the court erred in awarding Scott the residence. Specifically, Kyla argues that the court must "carefully divide all the equities" when there are "marital and pre-marital issues wrapped in the mortgage." We find this argument lacks merit.
 {¶ 24} The trial court determined that it was equitable to award Scott the residence. The evidence presented indicates that the home was purchased prior to the parties' marriage and had an appraised value of $165,000 but was subject to a mortgage of $207,500. The mortgage was held by Scott's parents who loaned him the money so that he could purchase the house and included an unspecified amount of debt previously owed by Scott to his parents. Kyla failed to provide the magistrate with any evidence on direct examination, cross-examination, or in her closing argument, regarding the home, the mortgage, or the extent of the debt Scott owed to his parents. As a result, the record does not include any evidence indicating how much of the mortgage debt is from Scott's prior debt owed to his parents.
 {¶ 25} Based on the evidence presented, the court determined that it was equitable to award the residence to Scott. The court also ordered Scott to refinance the mortgage to remove Kyla from any further mortgage obligations. We find no error in the trial court's decision.
 {¶ 26} Because the trial court did not abuse its discretion in equitably dividing the property, or in finding that Scott did not retain any of Kyla's property, her second assignment of error is overruled.
 {¶ 27} Assignment of Error No. 3:
 {¶ 28} "THE TRIAL COURT ERRED IN AWARDING THE CUSTODY OF THE CHILD TO THE PLAINTIFF."
 {¶ 29} Kyla argues that the court erred when it designated Scott the residential parent and legal custodian of Meredith, the parties' minor child. Kyla asserts that the court failed to *Page 7 
consider the age of the child, testimony indicating Meredith's condition after visiting Scott, and testimony regarding Scott's past violent behavior.
 {¶ 30} In custody matters, a trial court has wide latitude in considering all the evidence presented. Gehring v. Gehring, Warren App. No CA2003-03-038, 2004-Ohio-95, ¶ 6, citing Davis, 77 Ohio St.3d at 418,1997-Ohio-260. An appellate court reviews initial custody determinations in domestic relations cases for an abuse of discretion. Gamble v.Gamble, Butler App. No. CA2006-10-265, 2008-Ohio-1015, ¶ 3, citingBooth v. Booth, (1989), 44 Ohio St.3d 142, 144. An abuse of discretion occurs when the trial court's decision was unreasonable, arbitrary or unconscionable. Unger at ¶ 32. As a result, "where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed * * *." Davis at 418.
 {¶ 31} In determining the initial child custody designation, the trial court must follow the procedure outlined in R.C. 3109.04.Gehring at ¶ 7. A determination of the child's best interest remains the primary standard to be applied in custody cases. Gamble at ¶ 25, citingStan v. Stan, Preble App. No. CA2003-01-001, 2003-Ohio-5540, ¶ 9. In determining what is in the best interests of the child, the trial court must consider all relevant factors, including but not limited to, the factors specified in R.C. 3109.04(F)(1). Gehring at ¶ 7. These factors include: "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; * * * [and] (h) Whether * * * one of the parents * * * has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; * * *." See R.C. 3109.04(F)(1). The best interest of a child undoubtedly includes the involvement of both parents in the child's life. Davis at 419. Therefore, "[w]hen one parent begins to cut out another parent, especially one that has been, fully involved in that child's life, the best interest of the child is materially affected." (Emphasis sic.) Id. *Page 8 
 {¶ 32} As an initial matter, Kyla claims that the trial court did not take into consideration the child's age. However, the trial court explicitly stated that it based its decision, in part, by taking the child's age into consideration.[3]
 {¶ 33} The record indicates that the parties presented extensive evidence regarding what was in the best interests of the child. This evidence included testimony that Kyla periodically denied Scott his court-ordered parenting time between March 2, 2006 and March 15, 2006.[4] Further, the record includes evidence that Kyla communicated with, and apparently sent money to, a convicted child rapist between April 2005 and May 2005 while he was serving time in prison, that she falsely informed medical personnel that she had a court order preventing Scott from attending Meredith's medical appointments, and that she falsely accused Scott of giving his daughter drugs to make her sleep.[5] The record also indicates that Kyla continuously refused to allow Scott to see his daughter during court-ordered parenting time over a period of several months, and would not respect Scott's rights to be actively involved with his daughter in the future.[6]
 {¶ 34} After reviewing the record, we find that the magistrate and the trial court considered the R.C. 3109.04(F)(1) factors prior to designating Scott as residential parent and legal custodian. The magistrate discussed the evidence presented at the final hearing that was relevant to its decision regarding custody of the child. This included Kyla's communication with a convicted child rapist, her repeated refusal to permit Scott his court-ordered *Page 9 
parenting time, her falsely informing medical personnel that Scott was ordered not to be present during his daughter's medical procedures, her false accusation that Scott provided drugs to his daughter during his visitation, and her continuous refusal to permit Scott to visit his daughter. As a result, the magistrate designated Scott as the residential parent and legal custodian because it was only way to "ensure Husband remains an active involved parent." See Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260 (reinstating father as residential parent after mother repeatedly refused court-ordered visitation). The trial court adopted the magistrate's decision, noting that it was obligated to take into consideration the R.C. 3109.04(F)(1) factors, and that it "based its decision on the totality of the circumstances* * *." The record indicates that the trial court considered the relevant R.C. 3109.04(F)(1) factors prior to designating Scott as residential parent and legal custodian, and therefore, we find no error in the trial court's decision to designate Scott as the sole residential parent and legal custodian. Kyla's third assignment of error is overruled.
 {¶ 35} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] Her previous counsel sought to withdraw on March 30, 2007, the same day that Scott filed a contempt order against Kyla for refusing to permit him his court ordered parenting time.
[2] Scott's testimony was supported by his 2004, 2005 and 2006 tax returns highlighting his minimal income from his business venture.
[3] Specifically, the trial court stated that it was "cognizant of the child's age * * *" when it designated Scott as the residential parent and legal custodian.
[4] Kyla was designated the temporary residential parent and legal custodian on March 2, 2006. Scott moved for contempt on March 15, 2006, after Kyla refused to allow Scott to see his daughter during his court appointed parenting time.
[5] A toxicology screen revealed no findings to support Kyla's claims that Scott had given Meredith any drugs.
[6] Kyla did not permit Scott to see his daughter during court-ordered parenting time starting on February 9, 2007 and continuing through April 2007, for which she was later found in contempt. *Page 1