[Cite as *Jones v. Wall*, 2016-Ohio-2780.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STACEY W. JONES, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2015-10-088 |
| | : | O P I N I O N |
| - vs - | | 5/2/2016 |
| | : | |
| EMILY WALL, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 11 DR 34809

Peterson Law Offices, Shaun D. Peterson, 116 North Walnut Street, Wilmington, Ohio 45177, for plaintiff-appellee

John C. Kaspar, 130 East Mulberry Street, Lebanon, Ohio 45036, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Emily Wall ("Mother"), appeals a decision of the Warren County Court of Common Pleas, Division of Domestic Relations, granting custody of her child to the child's father, plaintiff-appellee, Stacey Jones ("Father").

{¶ 2} Mother and Father were married, and had two children before divorcing in 2012. According to the divorce decree, Mother was awarded sole custody of the children,

one of whom has since become emancipated. Three years later, Father sought custody of the younger child, alleging that the child, now 15 years old, was unhappy living with Mother. Initially, both Mother and Father proceeded pro se, but Mother eventually obtained counsel. On the morning of the hearing on Father's motion to change custody, Mother's attorney filed a motion for a continuance. However, the magistrate overruled the motion, and the custody matter proceeded before the magistrate.

{¶ 3} The magistrate issued a decision granting custody of the child to Father after finding a change of circumstances had occurred. Mother objected to the magistrate's decision, and her objections were overruled by the trial court. Mother now appeals the trial court's decision to overrule her objections, raising the following assignments of error. We will address Mother's first three assignments of error together, as they are interrelated.

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE TRIAL COURT'S FINDING THAT THERE WAS A CHANGE OF CIRCUMSTANCES WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} Assignment of Error No. 2:

{¶ 7} THE TRIAL COURT'S FINDING THAT ALLOCATION OF CUSTODY TO FATHER WAS IN THE BEST INTEREST OF THE MINOR CHILD WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} Assignment of Error No. 3:

{¶ 9} THE TRIAL COURT'S FINDING THAT THE BENEFITS OF PLACING THE MINOR CHILD WITH FATHER OUTWEIGH THE POTENTIAL HARM CAUSED BY SUCH A CHANGE WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10} Mother argues in her first three assignments of error that the trial court erred by granting custody of the child to Father because its findings were against the manifest weight of the evidence.

{¶ 11} Trial courts are entitled to broad discretion in custody proceedings. *Southworth v. Eskins*, 12th Dist. Fayette No. CA2013-10-028, 2014-Ohio-4523, ¶ 8. Given that custody issues are some of the most difficult decisions a trial judge must make, the trial court must be given wide latitude in considering all of the circumstances and evidence, and the decision must not be reversed absent an abuse of discretion. *Id.* The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 12} "Weight of the evidence concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its *effect in inducing belief*." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. (Emphasis sic.) In considering a challenge to the manifest weight of the evidence, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 10.

{¶ 13} In weighing the evidence, a reviewing court must be mindful of the presumption in favor of the finder of fact. *Id.* In determining whether the trial court's decision is manifestly against the weight of the evidence, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*

{¶ 14} When reviewing a trial court's decision on a manifest weight of the evidence basis, an appellate court is guided by the presumption that the findings of the trial court were correct so that reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment. *In re G.S.*, 12th Dist. Franklin No. 05AP-1321, 2006-Ohio-2530, ¶ 4.

{¶ 15} We presume that the trial court's findings are correct because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997). (Emphasis sic.)

{¶ 16} According to 3109.04(E)(1)(a),

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i)   The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>
> (ii)   The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 17} Although R.C. 3109.04 does not provide a definition of the phrase "change in circumstances," Ohio courts have held that the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Preece v. Stern*, 12th Dist. Madison No. CA2009-09-019, 2010-Ohio-857, ¶ 10.

{¶ 18} Factors that must be considered when making a best interest determination are listed in R.C. 3109.04(F)(1)(a)-(j).

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully

denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 19} After reviewing the record, we find that the trial court properly found that a change of circumstances had occurred, that it was in the child's best interest that Father have custody, and that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 20} The magistrate heard testimony that a change in circumstances occurred since the time Mother was granted custody of the child. The magistrate heard evidence that the child was in the sixth grade at the time of the divorce, but has now completed ninth grade, and is three years older than she was when her parents divorced. In the three years since the divorce, the child has experienced mental health issues and was hospitalized for two weeks for suicidal ideation. The child also began to engage in self-harming behaviors, such as cutting herself, and began to struggle with identifying her sexual orientation.

{¶ 21} Also since the time of the divorce, the child has experienced disciplinary issues with both her school and Mother. The child was suspended from school at one point because she took another person's prescription sleeping pill at school. The child also visited "extremely disturbing" websites, and now cannot use the internet without Mother's supervision.[1] Mother also restricts the use of the child's cell phone and monitors the child when she spends time with some of her friends. While Mother tried to seek counseling for the child, the child was not cooperative. Since the time of the divorce, Mother and the child have had a "high degree of conflict," and Mother has instructed Father to "come get" the child on numerous occasions. We find that these new circumstances since the time of the divorce

---

1. According to the record, the websites included cartoon pornography, videos on how to cut yourself and hide the cutting from your parents, as well as chat rooms specific to "rape murder fantasy."

constitute a situation that has a material and adverse effect upon the child, especially where the child has exhibited suicidal thoughts and self-harming behavior.

{¶ 22} While Mother argues that the child has had some level of mental health and behavioral issues ever since the divorce, we find that the issues have become increasingly concerning and now have a direct impact on the child's health and well-being. Even if the child had misbehaved or had mental health issues in the past, the circumstances surrounding her behavior and psychological issues have recently emerged in full force, even requiring hospitalization, and constitute a major struggle for the child and her parents. As such, we find that the trial court did not err in determining that a change of circumstances had occurred since the time of the divorce when Mother was first granted custody of the child.

{¶ 23} We also find that the trial court did not err in determining that a change of custody to Father was in the child's best interest. Regarding the best interest factors, the trial court considered evidence that both parents desired custody of the child. Even so, the trial court interviewed the child, and determined that the child "expressed a strong desire to live with Father." During the trial court's interview with the child, the child detailed issues that have arisen since the child began to live with Mother that have caused the child to self-harm and contemplate suicide. Conversely, the child expressed that she feels "at peace" when she is with Father, and that she has not had an urge to hurt herself when staying with Father. The child also enjoys her time with Father and Father's girlfriend, as well as her time with the children of Father's girlfriend. When she is with Father, the child feels "relaxed and accepted."

{¶ 24} Regarding the interaction and interrelationship with those involved, the magistrate heard evidence that while the child has a strained relationship with Mother, she has a close bond with Father and has a positive relationship with Father's girlfriend and her two children. Father also testified that he has a different parenting style than Mother, and

that he tries "to show my kids some respect. I get it back from them. I don't…I've never really had to be a hard ass on my kids. They usually do what I ask."

{¶ 25} The magistrate determined that the child had not adjusted well to her home with Mother, as she struggled with depression while in Mother's care and engaged in self-harm. The child also performed poorly in school, though she took solace in joining a gay, lesbian, bi-sexual, and transgender group at school.

{¶ 26} Conversely, the magistrate heard evidence that the child has adjusted well while in Father's care. Father testified that the child had been living with him since the school year ended, and that their time together had been "wonderful" and the child did not "complain about anything." Father also testified that since the child moved in with him and his girlfriend, the child has been helpful around the house, including landscaping the yard. Father also testified that the child enjoys spending time with his girlfriend's two children, who are of a similar age as the child.

{¶ 27} While neither parent has any physical or mental issues, the record is replete with evidence that the child suffers mental health issues that require attention. These mental health issues, as stated previously, include depression, self-harming tendencies, suicidal ideation, and behavioral problems. The magistrate heard testimony that the child's mental health issues are addressed by Father, and that the child does well while in his care. Conversely, the child's issues are exacerbated when in Mother's care.

{¶ 28} The magistrate found both parents likely to honor and facilitate parenting time, and at the time of the hearing, neither party had any child support arrearages. The magistrate heard evidence that Father had previously been charged with domestic violence, and pled guilty to disorderly conduct, but that the instance did not pertain to Mother or the child. Nor was any date given to specify when the disorderly conduct occurred.

{¶ 29} After reviewing this evidence, especially the improved condition of the child

while at Father's home, we find that the trial court did not abuse its discretion by finding it in the child's best interest that Father have custody. The combination of the child having mental health issues and the antagonistic relationship shared between Mother and the child demonstrate that the child is better served by being in an atmosphere with Father where she feels accepted, relaxed, peaceful, and does not feel an urge to self-harm.

{¶ 30} There is no doubt that Mother loves the child and acts in a manner she believes is helpful to the child. Even so, the child's best interest are served by Father having custody because the factors weigh in favor of allowing the child to cultivate her close bond with father and to be in a positive environment for continued growth and management of her mental health issues.

{¶ 31} The trial court also found, and we agree, that the change in the child's environment has benefits that outweigh any potential harm caused by the change in custody. As previously stated, the child's mental health issues and general behavioral issues had become increasingly severe while in Mother's care, despite Mother's attempt to have the child seek counseling and Mother's attempt to discipline the child. The magistrate found that the tension and conflict between the child and Mother might be "exacerbating" the child's struggles, whereas the child feels "safe, peaceful, and comfortable" in Father's care. Most importantly, the child told the magistrate that she has not felt any urge to harm herself since being in Father's care.

{¶ 32} After reviewing the record, we find that the trial court made proper determinations, supported by the manifest weight of the evidence, that a change in circumstances had occurred, that Father having custody of the child was in the child's best interest, and that the benefits of changing custody far outweigh any potential resulting harm. As such, Mother's first, second, and third assignments of error are overruled.

{¶ 33} Assignment of Error No. 4:

- 9 -

{¶ 34} THE TRIAL COURT'S DENIAL OF A MOTION TO CONTINUE CONSTITUTED AN ABUSE OF DISCRETION.

{¶ 35} Mother argues in her final assignment of error that the trial court erred in denying her motion to continue the hearing.

{¶ 36} The grant or denial of a motion for a continuance is a matter entrusted to the broad and sound discretion of the trial court. *Black v. Black*, 12th Dist. Clinton No. CA2008-06-022, 2009-Ohio-92, ¶ 11. Absent an abuse of discretion, a reviewing court will not disturb a trial court's decision denying such a motion. *Haynes v. Haynes*, 12th Dist. Clermont No. CA2008-01-003, 2008-Ohio-4963, ¶ 7.

{¶ 37} In ruling on a motion to continue, the trial court balances its interest in controlling its own docket and the public's interest in an efficient judicial system with the possibility of prejudice to the parties. *Tener v. Tener-Tucker*, 12th Dist. Warren No. CA2004-05-061, 2005-Ohio-3892, ¶ 42. Factors the trial court may consider include "the length of the delay requested, prior requests for continuances, the inconvenience to the parties, witnesses, counsel, and the court, whether the movant contributed to the circumstances giving rise to the request for a continuance, and other relevant factors depending on the facts of the case." *Wilson v. Redmond*, 12th Dist. Madison No. CA2003-09-033, 2004-Ohio-3910, ¶ 16.

{¶ 38} After reviewing the record, we find that the trial court did not abuse its discretion in denying Mother's motion for a continuance. The record indicates that the magistrate denied the motion for a continuance because the magistrate wanted to issue a decision before the child was set to start school, as all parties were aware that a change in custody would result in the child changing schools. The magistrate also considered that it had informed the parties approximately three weeks prior to the hearing date that the hearing would occur, and that Father would be inconvenienced by a continuance, as he and his witnesses had taken off of work and driven over an hour and a half to appear at court that

day.

{¶ 39} The record also indicates that the reason for the delay was that Mother's attorney had a scheduling conflict, even though the attorney entered an appearance on June 17, 2015 knowing the date of the hearing was set for June 24, 2015. The parties had been warned by the magistrate that time was of the essence, yet Mother's attorney waited until the morning of the hearing to request a continuance. Based on the record, we find that the trial court did not err in denying Mother's request for a continuance. As such, Mother's final assignment of error is overruled.

{¶ 40} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.