[Cite as *Hawbecker v. Hawbecker*, 2016-Ohio-5740.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| WILLIAM E. HAWBECKER, JR. | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 16-CA-9 |
| COURTNEY R. HAWBECKER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Fairfield County Court of Common Pleas, Domestic Relations Division, Case No. 2013 DR 00107

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 2, 2016

APPEARANCES:

For Plaintiff-Appellee

DAVID POSTON
155 E. Columbus St. Ste. 160
Pickerington, OH 43147

For Defendant-Appellant

NICHOLAS GRILLI
144 E. Main Street/P.O. Box 667
Lancaster, OH 43130

*Gwin, J.*

{¶1}    Appellant appeals the March 2, 2016 judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, overruling her objections to the magistrate's decision and entering a decree of divorce.

*Facts & Procedural History*

{¶2}    Appellant Courtney Hawbecker ("Wife") and appellee William Hawbecker, Jr. ("Husband") were married on October 24, 2009.  They had one child together, M.H., born on August 12, 2012.  The parties separated on April 12, 2012.  Husband filed a complaint for divorce on March 7, 2013.  Wife filed an answer and counterclaim on March 22, 2013.  Temporary orders were issued on April 23, 2013 and, effective April 11, 2013, Husband was ordered to pay $1,000 per month to Wife in spousal support and $1,109.93 to Wife in child support.  Husband filed a shared parenting plan on November 7, 2013.

{¶3}    A magistrate held a trial on May 8, 2014 and June 13, 2014.  The parties filed stipulations on June 13, 2014 agreeing to the admissibility of the Guardian Ad Litem reports and stipulating to the introduction into evidence of Husband's Exhibits 1-13 and Wife's Exhibits A-O.

{¶4}    The Guardan Ad Litem for M.H., Ralph Silvestri, Jr. ("Silvestri") testified M.H. is a very happy child and both parents are bonded with her.  He found both Husband and Wife had appropriate homes and had no concerns with either parent.  Silvestri believes M.H. would benefit from preschool for social interaction.  Silvestri testified shared parenting with equal parenting time would be his recommendation for M.H.  Silvestri stated Father's proposed shared parenting plan is something he thinks is in the child's

best interest because M.H. does not have to go more than a couple of days at a time without seeing either parent.

{¶5} When asked about which parent should be the residential parent for school placement purposes, Silvestri stated he would rather wait three years to decide on such a placement, but understood the need for finality of the case. However, Silvestri acknowledged any decision as to the residential parent for school placement could be modified with a change of circumstances. Weighing in Father's favor is the fact that he is in the marital home, his stability, and his roots in the community. Weighing in Mother's favor is that she has been the primary caregiver for M.H. since she was born. If Silvestri had to pick, he stated Father being more stable might tip the balance in his direction.

{¶6} Wife testified M.H. has lived with her since birth. Father requested a paternity test after M.H. was born. Wife stated during the first few months, Father did not visit very much, but would call and text about M.H. From when M.H. was three months old to March of 2013, Father had no set regular visits with M.H., but Wife and M.H. would spend the night at the marital home pretty close to every week-end. M.H. did not have any visits alone with Father until Father filed the complaint for divorce. Wife stated Father has been at every doctor's appointment for M.H. since she was born except two. Wife testified that since the divorce was filed, Father has, for the most part, followed visitation as the court ordered; however, he only took her overnight on Wednesday twice despite being permitted to keep her every Wednesday overnight. Wife stated it would be in the child's best interest for her to be the residential parent for school purposes.

{¶7} Wife works at a wellness club. For a while, Wife had a fixed work schedule, but now has a flexible schedule. Wife does not have set hours as her hours vary, but she

works at least twenty-six (26) hours per week and usually works closer to thirty-two hours (32) per week. Wife testified M.H. goes with her to work and there is a play area for her there. Wife is considering home-schooling M.H., but she is not opposed to private school. Wife stated she nets approximately $1,000 per month selling product and then has to pay expenses. She does not intend to get another job for the indefinite future, but hopes to sell more outside of the wellness club. Wife is not interested in sending M.H. to preschool or daycare because she does not believe either is required for socialization. Wife believes M.H. should be with a parent when she can be and does not want her to go to preschool even a few days a week. Wife is concerned about Husband's extensive travel.

**{¶8}** Wife did not file taxes in 2013 as she requested a continuance. Her rough estimate of sales, after expenses, for 2013 is approximately $7,000. Thus, when she files taxes for 2013, she will be paying taxes on approximately $7,000. Wife previously worked at Verizon and made $42,752.07 in 2007 and $40,887 in 2008.

**{¶9}** Wife testified her name is not on the deed or the mortgage of the marital home. She does not know where the down payment came from for the house, but she did not put any of her personal savings or checking in for it. She has never made a mortgage payment, or made a payment for taxes, insurance, or utilities. Wife stated she and Husband never had joint bank accounts during the marriage. Wife testified she is aware there was $37,000 in the Columbus Metro Account when Husband married her.

**{¶10}** Husband has worked for Defense Finance and Accounting Service for twenty years and, in 2013, made approximately $130,000. He has flexible start times. He can take off during the day and can work from home. He currently works from home two to three days per week, but can work up to four days a week from home. Husband

travels approximately once per month, but generally has flexibility on when he travels. Husband testified he travelled sixteen times last year and most trips were one to two days each. Husband is willing to pay for daycare/preschool, even if Wife wants to use it on the days she has M.H.

{¶11} Husband testified he did not visit M.H. in the first few months because Wife would not let him see M.H. When he tried to see M.H. early on, Wife limited him from seeing her and would not allow him to see the child by himself; he was only allowed to see the child when Wife was present. As to visitation since the divorce complaint was filed, Husband testified he has exercised all visitation except some Wednesday night overnights and he did not utilize all of these nights because he felt it was not fair to M.H. to have to get up so early so he could drive her home and go to work by 9:00 a.m. as Wife stated she had to be returned by this time.

{¶12} Husband testified he thinks it is in M.H.'s best interest for him to be the residential parent for school purposes because of his flexible schedule and his stability. Husband is concerned with Wife working and watching M.H. at the same time.

{¶13} The mortgage for the marital home is in Husband's name only and Husband testified he has made all the payments for the mortgage, utilities, taxes, and insurance. Husband testified about several bank accounts in his name. Husband stated he had an account at Columbus Metro Federal Credit Union prior to the marriage. Husband testified Exhibit 12 is the statement from the Columbus Metro Federal Credit Union for October of 2009, near the time he married Wife. Husband testified, and Exhibit 12 reflected, that the balance in the account on October 31, 2009 was $37,451.68. Exhibit 13 is the transaction history of the Columbus Metro account starting on July of 2012 and ending on March 31,

2014 and showing the account did not go below $37,451.68 until November of 2013. Husband testified he utilized the Columbus Metro account to accumulate savings and pay for expenses. Husband testified he and Wife never had joint bank accounts or joint bills during the marriage.

{¶14} The magistrate issued a decision on February 23, 2015. The magistrate determined the marriage terminated on March 7, 2013. With regards to martial property and debts, the magistrate noted Husband claimed several items were his separate property, including the bank account with Columbus Metro. The magistrate found Husband traced the amount of $37,451.68 in the Columbus Metro account as his separate property through his testimony and Exhibits 12 and 13. Further, the magistrate found that the balance in the account during the marriage never went below $37,451.68, the amount in the account prior to the marriage. The magistrate found $14,319.25 of the account was marital property, as there was $51,770.93 in the account as of February 28, 2013.

{¶15} With regards to spousal support, the magistrate went through each factor contained in R.C. 3105.18(C) and determined Wife was entitled to spousal support of $1,000 per month through July 31, 2014. In reviewing R.C. 3105.18(C)(I), the magistrate considered the tax consequences to each party and noted spousal support would be includable in Wife's income for tax purposes and would be deductible by Husband for tax purposes. After determining the amount of spousal support, the magistrate noted that Husband had been paying temporary spousal support to Wife since April 11, 2013 and ordered that if Husband overpaid spousal support, such overpayment should be offset against Wife's share of the marital portion of the bank accounts.

{¶16} As to the custody of M.H., the magistrate went through each factor contained in R.C. 3109.04(F). Based upon the review of these factors, the magistrate concluded shared parenting with equal parenting time is in the best interest of M.H.

{¶17} The magistrate further found, pursuant to R.C. 3109.04(G), the shared parenting plan has to designate a school placement parent. The magistrate found due to Husband's stability, it is in the best interests of M.H. for Husband to be the residential parent for school enrollment purposes.

{¶18} On March 23, 2015, Wife filed supplemental objections to the magistrate's decision. Husband filed a response to Wife's objections on May 12, 2015.

{¶19} On March 2, 2016, the trial court entered a judgment entry overruling Wife's objections to the magistrate's decision and issued a decree of divorce. The trial court found the magistrate appropriately determined Husband traced his separate property in the Columbus Metro account based upon the evidence presented. The trial court further found the magistrate did not err in offsetting any overpayment in spousal support against a property settlement because Wife's income at the time of trial according to her testimony was such that she would not have paid any tax on the spousal support she received. The trial court found no error in the magistrate's findings of fact or application of the law in determining which parent to designate as the school placement parent or the determination of equal parenting time. However, the trial court clarified that Husband is the residential parent for school placement purposes only, and the shared parenting plan shall not state he is the legal custodian for school placement purposes.

{¶20} Wife appeals the judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶21} "I. THE TRIAL COURT'S FINDING THAT $37,451.68 OF APPELLEE'S COLUMBUS METRO FEDERAL CREDIT UNION ACCOUNT WAS APPELLEE'S SEPARATE PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IN ERROR.

{¶22} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT OFFSET APPELLEE'S SPOUSAL SUPPORT OBLIGATION AGAINST APPELLANT'S DISTRIBUTION OF MARITAL ASSETS.

{¶23} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DESIGNATING APPELLEE THE RESIDENTIAL PARENT FOR PURPOSES OF SCHOOL PLACEMENT.

{¶24} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING APPELLEE EQUAL PARENTING TIME WITH THE MINOR CHILD.

{¶25} "V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DEVIATING CHILD SUPPORT FROM THE GUIDELINE ORDER."

I.

{¶26} Wife argues the trial court's finding that $37,251.68 of Husband's Columbus Metro Federal Credit Union account was Husband's separate property was against the manifest weight of the evidence. Wife specifically contends there was not sufficient evidence to support the trial court's finding that this separate property was maintained and traceable. We disagree.

{¶27} Pursuant to R.C. 3105.171, a court may award a party his or her separate property without impacting the equitable division of property. Separate property is defined by R.C. 3105.171(A)(6)(a) and includes any real or personal property, or interest in such,

that was acquired by one spouse prior to the date of the marriage. *Neville v. Neville*, 3d Dist. Marion No. 9-08-37, 2009-Ohio-3817.

**{¶28}** The statute goes on to state, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Therefore, traceability is the primary issue in determining whether separate property has become marital property due to commingling. *Oliver v. Oliver*, 5th Dist. Tuscarawas No. 2012 AP 11 0067, 2013-Ohio-4389.

**{¶29}** A party who wishes to have a particular asset classified as separate property has the burden of proving, by a preponderance of the evidence, that the asset is separate property. *Id.* It was thus Husband's responsibility to prove the property existed prior to the marriage and that it was traceable. *Id.*

**{¶30}** The characterization of property as separate or marital is a mixed question of law and fact, and the trial court's ruling must be supported by sufficient credible evidence. *Globokar v. Globokar*, 5th Dist. Stark No. 2009CA00138, 2010-Ohio-1737. We will not reverse the trial court's judgment as being against the manifest weight of the evidence if some competent, credible evidence supports the court's judgment. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). "Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion." *Vonderhaar-Ketron v. Ketron*, 5th Dist. Fairfield No. 10CA22, 2010-Ohio-6593.

**{¶31}** The trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d

212 (1967). The trial court is the fact finder and is free to believe all, some, or none of the testimony regarding any particular asset. The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶32} In this case, Wife challenges the trial court's finding that Husband had sufficiently traced $37,251.68 from his separate account and granting Husband credit for the same. At the hearing, both Husband and Wife testified they did not have any joint bank accounts. Husband testified he had $37,251.68 in the Columbus Metro account as of October 31, 2009, just prior to the parties' marriage. Husband also submitted Exhibit 12, an account history from the account, showing the balance of the account on October 31, 2009 was $37,251.68. Exhibit 13, submitted by Husband, was the transaction history of the Columbus Metro account and demonstrated the balance in the account did not drop below $37,251.68 until November of 2013, after the marriage ended. Wife testified she was aware there was approximately $37,000 in the Columbus Metro account when Husband married her.

{¶33} Based on the foregoing, we find the trial court did not err in finding Husband had sufficiently traced the $37,251.68 portion of the Columbus Metro account. Whether or not Husband's testimony was unreliable was an issue for the trial court as trier of fact. Clearly, the trial court found Husband's testimony, in conjunction with Exhibits 12 and 13, to be credible. Further, Wife failed to offer evidence contrary to Husband's assertions regarding the balance in the account on the date of marriage and/or the fact the account did not go below this number during the marriage. The trial court assigned the amount

over the $37,251.68 in the account as marital property. Accordingly, there is competent and credible evidence to support the trial court's determination. Wife's first assignment of error is overruled.

II.

{¶34} In her second assignment of error, Wife argues the trial court erred and abused its discretion when it offset any overpayment of spousal support to Wife against the property award.

{¶35} A review of the trial court's decision relative to spousal support is governed by an abuse of discretion standard. *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981). We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 514 N.E.2d 597 (1989). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶36} Wife cites this Court's decision in *Miller v. Miller*, 5th Dist. Coshocton No. 06 CA 3, 2006-Ohio-7019, in support of her argument. In *Miller*, the trial court stated in its judgment entry and decree of divorce that the "spousal support award is made in consideration of Husband continuing to pay and satisfy the debts incurred to purchase the Wife's home and automobile." *Id.* We cited the mandate included in R.C. 3105.171(C)(3) that the court provide for an equitable division of marital property prior to making any award of spousal support and found the language used by the trial court

unreasonably conditioned spousal support on the appellee's debt responsibilities and violated legislative intent. *Id.*

{¶37}  However, in this case, the trial court reviewed and made the marital property and debt distribution without regards to spousal support and determined the award of spousal support with the factors contained in R.C. 3105.18(C) without any consideration of the distribution of the marital property.  There is no indication in the judgment entry that the trial court allowed its determination as to the distribution of the marital property to be impacted by any consideration it gave to the issue of spousal support.

{¶38}  Thus, we find this case distinguishable from the *Miller* case and instead find the instant case analogous to *Gibson v. Gibson*, 5th Dist. Tuscarawas No. 2006 AP 01 009, 2007-Ohio-2087.  In *Gibson*, the trial court applied a credit for overpaid temporary spousal support to the property settlement. *Id.*  While the appellant in *Gibson* argued the case was analogous to *Miller* and thus the trial court improperly considered and mixed issues of property division and spousal support, this Court disagreed.  *Id.*  We overruled the appellant's assignment of error and found that, "the trial court merely applied appellee's spousal support credit against the amount appellee owed appellant as and for the property division.  Unlike in *Miller v. Miller*, * * * the trial court did not condition spousal support upon any debt responsibility or upon the property division." *Id.*  Accordingly, we apply our decision in *Gibson* and find the trial court did not err in offsetting any overpayment of temporary spousal support against the property award in this case.

{¶39}  Wife also argues the trial court did not properly take into consideration the tax consequences of such an offset pursuant to R.C. 3105.171(F)(6).  We disagree.  In the magistrate's decision, the magistrate specifically stated "the tax consequences of

each party, of an award of spousal support, must be considered. Spousal support would be includable in Wife's income for tax purposes and would be deductible by Husband for tax purposes." Further, after the objection to the magistrate's decision by Wife, the trial court reviewed the transcript, took judicial notice of the tax code, and found the magistrate did not err in failing to specifically address the tax consequences of the offset. The trial court cited Wife's testimony that she had not yet filed her 2013 tax return and, given the income she testified to making at trial and assuming she received an earned income credit for M.H., she would have received a federal tax credit and would not have paid any tax on the spousal support she received. Upon review of the record, we find the testimony of Wife supports the trial court's conclusion as she testified her rough estimate of income is approximately $7,000. Accordingly, we find the trial court adequately addressed the tax consequences of the offset.

{¶40} Further, we have previously held that a trial court does not abuse its discretion by not taking note of tax consequences if the evidence in this regard is speculative. *Forchione v. Forchione*, 5th Dist. Stark No. 2012CA00085, 2013-Ohio-1761. Neither party presented any evidence at trial concerning the tax consequences of either spousal support or the martial property division. Thus, the evidence in this regard is speculative and the trial court did not err in addressing the tax consequences any further than it did.

{¶41} Wife's second assignment of error is overruled.

III. & IV.

**{¶42}** In her third and fourth assignments of error, Wife contends the trial court erred in designating Husband as the residential parent for purposes of school placement and in awarding Wife and Husband equal parenting time with M.H.

**{¶43}** The standard of review in custody cases is whether the trial court abused its discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Given the nature and impact of custody disputes, the trial court's discretion will be accorded paramount deference because the trial court is best suited to determine the credibility of testimony and integrity of evidence. *Gamble v. Gamble*, 12th Dist. Butler No. CA2006-10-265, 2008-Ohio-1015. Specifically, "the knowledge a trial court gains through observing witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Therefore, giving the trial court due deference, a reviewing court will not reverse the findings of a trial court when the award of custody is supported by a substantial amount of credible and competent evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

**{¶44}** R.C. 3109.04 requires a trial court to consider the best interest of the child in making an award of custody incident to a divorce proceeding. R.C. 3109.04(F)(1) provides that, in making this determination, a court is to consider all relevant factors, including, but not limited to: (a) the wishes of the child's parents; (c) the child's interactions and interrelationship with her parents; (d) the child's adjustment to her home and

community; (e) the mental and physical health of all persons involved in the situation; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make child support payments * * *; and (j) whether either parent has established a residence, or is planning on establishing a residence, outside this state.

{¶45} Further, in determining whether shared parenting is in the best interest of the child, the court shall consider all relevant factors, including, but not limited to, the factors already listed above, the factors in section 3119.23 of the Revised Code, and the following factors: (a) the ability of the parents to cooperate and make decisions jointly, with respect to the child; (b) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (c) the geographic proximity of the parents to each other; and (d) the recommendation of the guardian ad litem of the child.

{¶46} Accordingly, we must examine the record to determine whether the trial court considered all of the necessary factors listed in R.C. 3109.04(F)(1) and (F)(2) and whether there is competent and credible evidence supporting the trial court's determination that designating Husband as the residential parent for the purposes of school placement was in M.H.'s best interests and that equal parenting time was in M.H.'s best interest.

{¶47} Upon review of the record, we find the magistrate considered and completed a detailed analysis of the applicable factors listed in R.C. 3109.04(F)(1) and (2). Silvestri testified M.H. is a very happy child and is bonded to both parents. He found both parents had appropriate homes and he had no concerns with either parent.

Silvestri's recommendation as to parenting time was equal parenting time. Silvestri stated Husband's proposed shared parenting plan is in M.H.'s best interest because M.H. does not have to go more than a couple of days at a time without seeing either parent.

{¶48} Wife specifically argues equal parenting time is not in the best interest of M.H. because Wife raised M.H. solely for the first three months of her life, Husband has had limited and sporadic contact with M.H., and Husband frequently travels for work.

{¶49} Though Wife contends the magistrate and trial court failed to properly consider the fact that she was the primary caregiver of M.H. for the first three months of her life, the transcript shows the trial court was clearly aware of Wife's earlier role as primary caregiver. Further, Husband testified he did not visit M.H. for the first three months because Wife would not let him see M.H. Additionally, though Wife argues Husband's visitation was "limited and sporadic," Wife testified that from when M.H. was three months old to March of 2013, she and M.H. would spend the night at the marital home pretty close to every week-end. Wife further stated that, since the divorce was filed in March of 2013 until the date of the trial over a year later, Husband has, for the most part, followed visitation as the court ordered, other than not utilizing all Wednesday overnights. Husband testified Wife would not permit him to see M.H. by himself prior to this filing of the divorce and, since the divorce was filed, he has exercised all visitation except some Wednesday overnights and he did not utilize all of these nights because he felt it was unfair to M.H. to have to get up so early to return her to Wife by 9:00 a.m.

{¶50} Finally, while Wife testified to Husband's extensive travel, Husband testified he travels approximately once per month, but generally has flexibility as to when he travels. Husband stated he travelled sixteen times last year and most trips were one to

two day trips.  As noted above, the trial court is in the best position to judge the credibility of the witnesses and weigh the evidence.  *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).  In this case, the trial court considered the factors enumerated in R.C. 3109.04(F)(1) and (2).  R.C. 3109.04(F) provides the court with discretion to weigh the relevant factors and determine how those factors apply to the child's best interests with regards to parenting time.  *Lutton v. Briggs,* 5th Dist. Stark No. 2014CA00214, 2015-Ohio-1910.

{¶51} As to school placement, Wife specifically argues the trial court erred in designating Husband the residential parent for school placement because it is not in the best interest of the child and because such a designation is not required under R.C. 3109.04(G) since M.H. is not of school age.

{¶52} As noted above, upon review of the record, we find the magistrate considered and completed a detailed analysis of the applicable factors listed in R.C. 3109.04(F)(1) and (2).  Each parent testified it was in M.H.'s best interest for them to be the residential parent for school purposes.  Silvestri stated he would rather wait to decide on such a placement, but understood the need for finality in the case.  Silvestri testified weighing in Husband's favor is the fact that he is in the martial home and his stability.  Weighing in Wife's favor is the fact she has been the primary caregiver since birth.  However, if Silvestri had to pick, he would pick Husband, as his stability would tip the balance in his direction.  In addition, Silvestri stated early education and enrollment in a preschool for a few days a week would be in the best interest of M.H.  While Husband was in favor of preschool, Wife testified she does not want M.H. to go to preschool, even if it were only for a few days a week.

{¶53} While Wife argues the trial court failed to take into account her own stability and work flexibility, it is clear from the record that the trial court did consider Wife's history and employment into consideration, as the magistrate noted Wife "has been a resident of Newark, Ohio for most of her life," "Wife takes M.H. to work with her at Wife's brother's business", and "Wife has extended family in the Newark area." The magistrate and trial court found both parents to be loving parents and both bonded with M.H. Further, the magistrate and trial court found no concerns with the ability of either party to appropriately parent the child. However, the trial court also took into consideration Husband's twenty-year career with the Department of Defense, his ties to the community, his extended family in the Pickerington area, and the flexibility with his start time and ability to work from home.

{¶54} In this case, the trial court considered the factors enumerated in R.C. 3109.04(F)(1) and (2). R.C. 3109.04(F) provides the court with discretion to weigh the relevant factors and determine how those factors apply to the child's best interests. *Lutton v. Briggs,* 5th Dist. Stark No. 2014CA00214, 2015-Ohio-1910. Given the nature and impact of custody disputes, the trial court's discretion will be accorded paramount deference because the trial court is best suited to determine the credibility of testimony and integrity of evidence. *Gamble v. Gamble*, 12th Dist. Butler No. CA2006-10-265, 2008-Ohio-1015. Specifically, "the knowledge a trial court gains through observing witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Upon review of the record, we find there is competent and credible evidence to support the trial court's decision with regards to the designation of Husband as the residential

parent for purposes of school placement. We note, as did Silvestri during the trial, that any such designation is subject to modification as provided by the Ohio Revised Code.

{¶55} As to Wife's argument that the magistrate and trial court improperly applied R.C. 3109.04(G), we first note that Wife failed to raise this argument in her objections to the magistrate's decision and thus it is waived on appeal. *The Strip Delaware, LLC v. Landry's Restaurants, Inc.*, 5th Dist. Stark No. 2010CA00316, 2011-Ohio-4075. However, even if we were to consider Wife's argument relying on the *Bomberger-Cronin* case, we find this case to be distinguishable from the instant case. In *Bomberger-Cronin v. Cronin*, 2nd Dist. Greene No. 2014-CA-4, 2014-Ohio-2302, the Second District found a shared parenting plan was not legally insufficient because it did not designate a residential parent for school placement of a two-year old child. However, in this case, there is no issue as to the legal sufficiency of the shared parenting plan and the magistrate and trial court found school placement to be a relevant factor pursuant to R.C. 3109.04(G), despite M.H.'s age. We find such a determination not to be an abuse of discretion as the trial court has the discretion to determine which factors are relevant and to determine how those factors apply to the child's best interests. *Lutton v. Briggs,* 5th Dist. Stark No. 2014CA00214, 2015-Ohio-1910; *Allen v. Allen*, 12th Dist. Warren No. CA2010-11-107.

{¶56} Wife's third and fourth assignments of error are overruled.

V.

{¶57}  In her fifth assignment of error, Wife contends the trial court abused its discretion and erred in deviating child support from the guideline order.  Specifically, Wife contends that since the trial court's order of equal parenting time was an abuse of discretion, the trial court's deviation from the child support guideline was an abuse of discretion.  Given our analysis and overruling of Wife's assignment of error regarding equal parenting time, we find the trial court did not abuse its discretion in deviating from the child support guideline order pursuant to R.C. 3119.22.  Wife's fifth assignment of error is overruled.

{¶58}  Based on the foregoing, the judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed.

By Gwin, J.,

Farmer, P.J., and

Baldwin, J., concur